**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

PATRICIA BANKS,

                 Plaintiff,

      v.

THE CHICAGO BOARD OF EDUCATION,
an Illinois Municipal
Corporation, and FLORENCE
GONZALES, an Individual,

                 Defendants.

Case No. 11 C 7101

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion for Summary for Judgment and Defendants' Motion to Strike. For the reasons stated herein, the Court grants in part and denies in part Defendants' Motion to Strike and grants Defendants' Motion for Summary Judgment.

## I.  BACKGROUND

Plaintiff Patricia Banks, (hereinafter, the "Plaintiff" or "Banks"), is a former teacher at George Washington High School ("George Washington") in Chicago. She began teaching at George Washington approximately 23 years ago and remained employed there until she retired in February 2011.

In January 2008 Florence Gonzales ("Gonzales") became principal at George Washington. At this time, Banks was one of the school's physical education teachers. Banks states that

immediately after Gonzales took over as principal, she terminated a handful of administrators and deans. Banks claims that after these terminations occurred, "the student population began to spiral out of control with gang and racially motivated fights occurring in the school and a walkout by students to protest the increasingly unsafe environment." Pl.'s Mem. in Opp. to Summ. J. at 2.

As a result of the increase in violence, on April 15, 2008, the Chicago Teacher's Union called a staff meeting. At this meeting, Banks vocalized her concerns about the violence at George Washington and announced that she believed Gonzales and her staff were discriminating against African-American students and teachers.

After the meeting, Banks claims Gonzales began to scrutinize her job performance unfairly, citing her repeatedly for "alleged disciplinary infractions." *Id.* at 3. These disciplinary infractions include excessive tardiness, leaving a classroom without permission, failing to carry out a directive, using verbally abusive language in front of students, and failing to submit lesson plans. *See* Pl.'s Mem. in Opp. to Summ. J., Ex. J.

On or about August 27, 2008, Gonzales reassigned Banks to teach special education. Gonzales informed Banks that the reassignment was due to a shortage of qualified personnel. Banks was one of the few teachers at George Washington who was certified

- 2 -

to teach special education. Banks argues the reassignment was a plot to force her into retirement.

On September 2, 2008, Banks began teaching special education. Immediately after she started, conflicts arose between her and Gonzales. Specifically, Banks references an encounter that occurred as a result of her refusal to complete "Individual Education Plans," ("IEPs"). Banks claims she did not know how to complete IEPs since these forms are only required for special education teachers. She also claims that Gonzales did not offer her any additional training or instruction.

Because Banks refused to complete IEPs, on September 25, 2008, Gonzales called Banks into her office and threatened to discipline her for insubordination. Allegedly, after Banks explained her concerns in signing IEPs without fully understanding what the forms were, Gonzales changed the disciplinary charge to tardiness. (It is undisputed that between September 2, 2008, and March 6, 2009 Banks was tardy 93 times.)

The above example is only one of the many disciplinary issues in which Banks was involved while Gonzales was principal at George Washington. Other examples include (1) a November 2008 complaint Gonzales received from a parent of one of Banks' students which accused Banks of using verbally abusive language and spitting in the parent's face after the parent sought more information about her son; (2) a May 2009 disciplinary hearing for failing to submit

lesson plans and using verbally abusive language; (3) a January 2010 action for assaulting, threatening, and/or physically abusing another teacher; and (4) an August 2010 warning issued by the Defendant Chicago Board of Education ("the Board") warning Banks that if her misconduct continued, she would be dismissed.

Banks contends that these events combined with the information Banks learned from other employees at George Washington "that Gonzales had referred specifically to Banks and other African-American educators in racially derogatory language" constitute direct evidence that Gonzales was discriminating against Banks. *Id.* at 4.

On February 2, 2010, Banks filed a charge with the Equal Employment Opportunity Commission (the "EEOC") against the Board and Gonzales (collectively "Defendants") alleging racial discrimination. On February 24, 2010, she filed the same charge with Board's internal Equal Opportunity Compliance Office (the "EOCO").

Banks claims that after Gonzales learned of these charges, Gonzales retaliated against her. Thus, on May 25, 2010, Banks amended her EEOC claim to include a charge of retaliation.

Shortly after this, problems for Banks continued. In the fall 2010, Banks claims she observed one of her female students, ("L.I.") "repeatedly putting her hands down the front of her pants to scratch." *Id.* at 8. Based on this observation, on December 10,

2010, Banks escorted L.I. to the nurse's office to have her physically examined allegedly because she was concerned for L.I.'s well-being. The examination required L.I. to remove her pants and undergarments, and Banks failed to obtain the requisite parental consent prior to the exam.

On December 13, 2010, L.I.'s parents came to George Washington to discuss the incident with Gonzales and Banks. Banks claims that during the meeting, L.I.'s mother became angry and started to yell. Allegedly at this time, L.I.'s father stepped in between Banks and L.I.'s mother and "put his hands on Banks' mid-section." *Id.* at 8-9. Recognizing the situation was only escalating, the assistant principal ordered Banks to return to her classroom. Before leaving, Banks told a police officer who witnessed the incident to arrest the L.I.'s father for assault. When the officer refused to do so, Defendants claim that Banks said, "I know how to get things done," and walked out. Defs.' Memo. in Supp. of Summ. J. at 2.

The next day Banks reported L.I.'s father to the Department of Children and Family Services ("DCFS"). Banks informed DCFS that she suspected L.I.'s father was sexually abusing his daughter. (Banks admits that this report was made contrary to the mandated procedures at George Washington which require teachers to report any suspicions of abuse or neglect immediately to their supervisors.) Because of this report, DCFS removed L.I.'s father from his home. Two days later, DCFS concluded that Banks'

allegations were without merit and allowed the father to return home.

On December 16, 2010, police escorted Banks out of George Washington and provided her a letter that instructed her to report to the "Area 23 Office until further notice." Pl.'s Memo. in Opp. to Summ. J. at 9. Banks followed these instructions from December 16, 2010 until the end of the school year on June 21, 2011.

Banks alleges that after she was removed from the school, she and her union representative sent the Board multiple inquiries seeking an explanation for her removal. She claims that the Board did not respond to these inquiries until May 23, 2011.

On February 25, 2011, Banks filed for retirement. She states that she did so only because she believed her career and her pension were in jeopardy. On May 23, 2011, the Board responded to Banks' request and informed her that an explanation for her removal was moot in light of her upcoming retirement which would become effective on June 30, 2011.

On September 16, 2011, Banks applied for a substitute teacher position. However, after receiving her application, the Office of Employee Relations informed her that she was on the "Do Not Hire" list.

On October 7, 2011, Banks filed the instant suit against the Board and Gonzales (collectively, the "Defendants"). In her

Complaint, she brings six counts alleging racial discrimination and unlawful retaliation.

Count I alleges that the Board subjected Banks to racial discrimination in violation of Title VII while Count II alleges retaliation in violation of Title VII. Counts III and IV allege violations of Banks' rights under 42 U.S.C. § 1981 and 42 U.S.C. § 1983 and are asserted against both Defendants. Counts V and VI are pendant state law claims and allege Defendants are liable under the Illinois Whistleblowers Act, 740 ILCS § 174/1 and the Illinois Personnel Records Review Act, 820 ILCS § 40/1.

On October 18, 2012, Defendants filed a Joint Motion for Summary Judgment with respect to all of Plaintiff's claims. On November 30, 2012, Defendants filed a Joint Motion to Strike unsworn declarations, and portions of Plaintiff's additional facts, affidavit and response to Defendants' facts. Both motions are currently before the Court.

## II. <u>DISCUSSION</u>

### A. **Defendants' Motion to Strike**

Defendants seek to strike (1) the declaration from Sue Rangel; (2) the declaration of Phil Corich; (3) expulsion charts; (4) portions of Plaintiff's Statement of Additional Facts which are legal conclusions; (5) Plaintiff's Exhibit "V"; (6) portions of Plaintiff's Statement of Additional Fact that only cite the complaint; (7) Plaintiff's Affidavit; (8) portions of Plaintiff's

Statement of Additional Facts that are irrelevant and immaterial to summary judgment; and (9) portions of Plaintiff's Response to Defendants' Statements of Fact that fail to cite any part of the record as evidence. Plaintiff opposes Defendants' Motion in its entirety.

### 1. *Declaration of Sue Rangel*

Plaintiff submits the declaration of former assistant principal, Susan Rangel, as support in opposing Defendants' Motion for Summary Judgment. *See* Pl.'s Mem. in Opp. to Summ. J., Ex. K. ECF No. 44-12. Defendants argue that the Court should refuse to consider this declaration because it is unsigned and unsworn. Plaintiff does not deny these deficiencies exist, and instead argues that the declaration is appropriate for the Court's consideration since Defendants obtained and produced this document to Plaintiff.

Federal Rule of Civil Procedure requires that declarations submitted in summary judgment proceedings comply with 28 U.S.C. § 1746's requirements that the "declarant state that the declaration is true under penalty of perjury." *Hernandez-Martinez v. Chipotle Mexican Grill, Inc.*, No. 11-C-4990, 2012 U.S. Dist. LEXIS 94092 at *16 n.2 (N.D. Ill. July 9, 2012).

It is undisputed that Susan Rangel's declaration is unsigned and unsworn and fails to include any language which suggests that the statements are true under penalty of perjury. The Court

- 8 -

therefore strikes the declaration of Susan Rangel and refuses to consider it for the purposes of summary judgment.

### 2. *Declaration of Phil Corich*

Defendants also argue that the Court should strike the declaration of Phil Corich because it is unsworn. Plaintiff responds by correcting her error and providing the Court an affidavit from Phil Corich that is sworn and signed. *See* ECF No. 57-5. While the Court notes that Plaintiff's new submission is untimely, the Court accepts Plaintiff's corrected declaration and denies Defendants' Motion to Strike with respect to the declaration of Phil Corich.

### 3. *Expulsion Charts*

Plaintiff also submits expulsion charts as evidence in support of her racial discrimination claim. Defendants argue that the Court should strike these charts because they are irrelevant and inadmissible. Plaintiff argues such documents are admissible under the business record exception.

The Court finds this evidence irrelevant to Plaintiff's claims. Banks' Complaint alleges that Defendants discriminated against her on the basis of her race through her employment as a teacher at George Washington. While Banks is permitted to submit circumstantial evidence to illustrate a discriminatory animus Defendants had against *her*, the Court does not find statistical evidence regarding the race of students who were expelled at George

Washington relevant to Plaintiff's claims.  Thus, the Court grants Defendants' Motion to Strike Plaintiff's Exhibit "DD."

### 4. Plaintiff's Additional Facts that are Legal Conclusions and Argumentative Opinions

Defendants argue that the Court should strike Plaintiff's Exhibits "P," "U," "V," and "AA" because these exhibits contain impermissible legal conclusions.

Exhibit "P" is Banks' EOCO discrimination complaint.  The Court does not find the contents of this exhibit to contain any legal conclusions and therefore declines to strike it.

Exhibit "U" and "V" are letters from the Chicago Teachers Union to the EOCO.  These letters list five grievances filed against Gonzales and request that the EOCO provide the results of the investigations of the five grievances.  The letters do not contain any legal conclusions or opinions, and therefore will not be stricken.

Exhibit "AA" is an affidavit from Sara Meegan, a former employee at George Washington.  While Defendants argue that the Court should refuse to consider this because it contains legal conclusions, the Court disagrees.  In the affidavit, Meegan states she was employed at George Washington in 2008 and claims that after Gonzales became principal, she replaced many administrators at George Washington.  She contends the replacement of the administrative staff led to an increase of violence at George Washington.  She also states that she spoke at the April 2008

meeting and like Banks, vocalized concerns regarding her belief that the George Washington administration was discriminating against African-American students and teachers. The Court finds these statements within Meegan's personal knowledge and observation and therefore proper for the Court's consideration.

Defendants also argue that paragraphs 18 and 36 of Plaintiff's Statement of Additional Facts contain impermissible legal conclusions.

Paragraph 18 reads:

> Banks, along with Archambeau, Sara Meegan, and John Whitfield reported this behavior to the Chicago Board of Education. Banks reported the allegations both orally and in writing to the Boards Equal Opportunity Compliance Office on February 24, 2010, and to the Equal Employment Opportunity Commission on February 2, 2010. In her EEOC filing, Banks alleged that the illegal and discriminatory acts by Gonzales were ongoing, creating a hostile work environment, and constituting a continuing violation of state and federal law.

Pl.'s Statement of Additional Facts at 7.

Paragraph 36 reads:

> On August 25, 2011, the Chicago Teachers Union filed another grievance, this time for five separate claims originating at GWHS regarding racial hostility and discrimination in the school in 2009 and 2010, but which CPS has to date failed to respond to. CPS response was that they owed no answer to the Chicago Teachers Union. The patter of behavior by CPS Board of Education evidences either willful ignorance, complicity, or outright support for racial hostility and discrimination ongoing at George Washington.

*Id.* at 12.

The Court rejects Defendants' contention that Paragraph 18 contains any legal conclusions. The last sentence summarizes what Banks alleged in her EEOC filing. Thus, the Court denies Defendants' Motion to Strike paragraph 18.

With respect to Paragraph 36, the Court finds only the last line an impermissible legal conclusion, and as such grants Defendants' Motion to Strike only with respect to this statement. *See Prince v. Chi. Pub. Sch.*, No. 09-CV-2010, 2011 WL 3755650, at *2 (N.D. Ill. Aug. 25, 2011).

### 5. Plaintiff's Exhibit "V"

Defendants argue Plaintiff's Exhibit "V" also should be struck because it is hearsay. Exhibit "V" is a letter from the Chicago Teachers Union to the EOCO. Plaintiff claims Exhibit "V" falls within the business record exception under Federal Rule of Evidence 803(6) and therefore is admissible. The Court agrees.

Federal Rule of Evidence 803(6) provides that documents are admissible as a business record if the party attempting to admit the evidence demonstrates that the document was "kept in the course of regularly conducted business activity and [that it] was the regular practice of that business activity to make records, as shown by the testimony of the custodian or other qualified witness." *Collins v. Kibort*, 143 F.3d 331, 337 (7th Cir. 1998). Banks points out that the Chicago Teachers Union enforces the

collective bargaining agreement the teachers have with the Board, and a grievance letter is a record of that activity. The Court finds this persuasive and denies Defendants' Motion to Strike Exhibit "V."

### 6. Paragraphs 27, 30, 36, & 39

Defendants argue that paragraphs 27, 30, 36, and 39 should be struck because they only cite Plaintiff's Complaint. After reviewing these paragraphs, the Court finds paragraph 30 to be the one that relies solely on Plaintiff's Complaint. The Court does not find this paragraph dispositive with respect to Defendants' summary judgment motion and therefore denies Defendants' Motion to Strike these paragraphs.

### 7. Plaintiff's Affidavit

Next, Defendants argue that the Court should strike paragraphs 4, 6, 10, 11, 12, 14, and 28 from Plaintiff's affidavit because these allegations are either comprised of Plaintiff's unsupported opinion or are contradicted by previous testimony.

After reviewing these paragraphs, the Court agrees with Defendants with respect to the last lines in paragraphs 4, 6, 10, and 11. The Court finds these statements conclusory. Similarly, the Court finds paragraphs 12 and 14 to be statements based only on Plaintiff's beliefs and not within her personal knowledge. Thus, the Court strikes these statements as well. *See* FED. R. CIV. P. 56(e) (requiring that affidavits filed in opposition to a

summary judgment motion be based on an affiant's "personal knowledge" and set forth "facts as would be admissible in evidence.").

The Court denies Defendants' Motion to Strike paragraph 28, as the Court does not find this dispositive with respect to Defendants' summary judgment motion.

### 8. Paragraphs 2, 3, 13, & 14 of Plaintiff's Statement of Additional Facts

Defendants argue that these paragraphs should be struck because they are irrelevant and immaterial to Defendants' Motion for Summary Judgment. Because the Court finds these paragraphs non-dispositive for the purposes of summary judgment, the Court denies Defendants' Motion as moot.

### 9. Plaintiff's Response to Defendants' Statements of Fact

Finally, Defendants argue that the Court should strike portions of Plaintiff's Response to Defendants' Statements of Fact because portions of the response dispute Defendants' Statements of Fact without providing citations to the record. After reviewing the specific paragraphs Defendants seek to strike, the Court does not find any dispositive. Accordingly, the Court denies Defendants' Motion to Strike these paragraphs.

### B. Defendants' Motion for Summary Judgment

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and [it]

is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

A dispute is "genuine" if the evidence would permit a reasonable

jury to find for the non-moving party. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). A dispute is material if it could

affect the outcome of the case. *Id.* If the moving party satisfies

its burden, the non-movant must present facts to show a genuine

dispute exists to avoid summary judgment. *See Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323-24 (1986). To establish a genuine issue

of fact, the non-moving party "must do more than show that there is

some metaphysical doubt as the material facts." *Sarver v. Experian*

*Info. Sys.*, 390 F.3d 969, 970 (7th Cir. 2004).

### 1. *Count I*

Count I alleges that the Board discriminated against Banks on

the basis of race in violation of Title VII. Defendants argue that

they are entitled to summary judgment because Plaintiff fails to

establish a *prima facie* case.

Title VII "prohibits employment discrimination on the basis of

race, color, religion, sex, or national origin." *Ricci v.*

*DeStefano*, 557 U.S. 557, 577 (2009) citing 42 U.S.C.

§ 2000e-2(a)(1). It prohibits both intentional discrimination and

practices that are not intended to discriminate but have "a

disproportionately adverse effect on minorities." *Ricci*, 557 U.S.

at 577. Racial discrimination claims can be established in one of

two ways – under a direct or indirect method of proof. *Lewis v.*

*City of Chicago*, 496 F.3d 645, 652 (7th Cir. 2007). Regardless of the method of proof, a plaintiff must establish that she experienced a materially adverse employment action. *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004).

There are three general groups of adverse employment actions. Such actions may affect:

> (1) the employee's current wealth such as compensation, fringe benefits, and financial terms of employment including termination; (2) the employee's career prospects thus impacting the employee's future wealth; and (3) changes to the employee's work conditions including subjected her to humiliating, degrading, unsafe, unhealthy, or otherwise significant negative alternation in [her] work place environment.

*Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744-45 (7th Cir. 2002).

In this case, Banks proceeds under the direct method. She claims her adverse employment action falls into the third category – a hostile work environment. Alternatively, Banks states that she can establish an adverse employment action that falls within the second category in *Herrnreiter*.

Defendants argue that Plaintiff is precluded from asserting her hostile work environment claim since she failed to allege she was subjected to a hostile work environment in both her Complaint and EEOC charge.

The Court excuses Plaintiff's failure to specifically include the words "hostile work environment" in either filing. In her

- 16 -

Complaint, Plaintiff alleges that the Board discriminated against her because of:

> the terms, conditions, and privileges of employment by being complicit with the racially motivated discriminatory practices of Florence Gonzales despite Banks' repeated complaints; by actively suppressing claims of racial discrimination and hostility at George Washington High School by numerous staff members including Banks; by actively seeking Banks' termination based on charges levied by Gonzales knowingly found to be false; refusing Banks access to her personnel file; and refusing to hire Banks to work as a retired substitute teacher by placing her on the CPS "Do Not Hire" list.

Compl. at 19-20.

The Court presumes Plaintiff intended these allegations to constitute a hostile work environment claim under Title VII, and therefore turns to the issue of whether Plaintiff has demonstrated a *prima facie* case.

### a. Hostile Work Environment

To survive summary judgment on a hostile work environment claim based on race, Banks must establish that (1) she was subjected to unwelcome harassment that was both subjectively and objectively offensive; (2) the harassment was based on her race; (3) the harassment was severe and pervasive enough to alter the conditions of her environment and create a hostile working environment; and (4) there is a basis for employer liability. *Velez v. City of Chicago*, 442 F.3d 1043, 1047 (7th Cir. 2006). An employer is liable if the plaintiff's supervisor created the

- 17 -

hostile work environment. *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998).

It is undisputed that as principal, Gonzales was Plaintiff's supervisor. Thus, for the purposes of Defendants' Motion for Summary Judgment, the Court must determine whether Plaintiff has presented sufficient evidence to demonstrate a triable issue exists as to whether she was harassed based on her race and whether a disputed issue exists with respect to the "quantity, frequency, and severity" of the incidents Plaintiff claims establish a hostile work environment. *Vore v. Indiana Bell Tel. Co.*, 32 F.3d 1161, 1164 (7th Cir. 1994).

As direct evidence, Plaintiff submits affidavits from two former employees at George Washington, James Archambeau and Philip Corich. She argues these affidavits demonstrate that Gonzales' actions were racially discriminatory. These affiants claim that they heard Gonzales refer to Banks using racially derogatory language. Accepting these statements as true, the Court does not deny that such statements are distasteful and inappropriate. However, this evidence, without more, is insufficient to support Banks' hostile work environment claim.

The Seventh Circuit instructs that offensive statements made outside a plaintiff's presence, even if accompanied by "a few [offensive] statements made directly to [plaintiff]" [do] not constitute harassment [that is] so severe or pervasive that it

- 18 -

alters the conditions of the plaintiff's employment." *Thompson v. Mem. Hosp. of Carbondale*, 625 F.3d 394, 401 (7th Cir. 2010).

Here, Banks admits that she never heard Gonzales utter a single racial slur. Pl.'s L.R. 56.1(b)(3)(A) Resp. at 19. Instead, the bases of her EEOC charge and her Title VII hostile work environment claim are only the statements that others told her. *See id.* This is insufficient to establish a hostile work environment under Title VII. *See Mason v. S. Illinois Univ. at Carbondale*, 233 F.3d 1036, 1046 (7th Cir. 2000) (holding that "for alleged incidents of racism to be relevant to showing the severity or pervasiveness of the plaintiff's hostile work environment, the plaintiff must know of them."). Thus, the Court does not find the affidavits of either Archambeau or Corich demonstrate a hostile work environment.

Banks also contends that her "[i]n conjunction with the discriminatory language and reassignment, the 21 separate disciplinary actions" constitute a hostile work environment. Pl.'s Memo in Opp. of Summ. J. at 18. The Court disagrees.

First, Banks fails to offer any evidence which suggests that any of her 21 disciplinary infractions were meritless or issued against her as a form of harassment. While Banks claims that on September 25, 2008, Gonzales initially intended to discipline her for failing to complete IEP's and then changed the action to one for tardiness, Banks admits she was tardy 93 times from

- 19 -

September 2, 2008 to March 6, 2009. Thus, the Court does not find such evidence indicative of a severe and pervasive racial harassment.

As further support, Banks admits that in August 2010 the Board issued her a "Warning Resolution" notifying her that if she did not cease her misconduct dismissal charges would be instituted against her. Pl.'s L.R. 56.1(b)(3)(A) Resp. at 14. The prior misconduct the Board was referring to included, "shoving a staff member on December 16, 2009; refusing to participate in a post-observation conference on January 20, 2010; placing materials about her private massage business in the main office . . . [using] verbally abusive language; and insubordination." *Id.* Plaintiff admits that the Board sent this notice and admits that the warning referred to the aforementioned misconduct. Plaintiff fails to provide any evidence or argument which suggests that these incidents were false or somehow initiated because Plaintiff was African-American. Thus, the Court finds Plaintiff has failed to present evidence which could cause the Court to find that these disciplinary actions for her misconduct demonstrate a hostile work environment.

### b. *Adverse Employment Action*

Banks also argues that her reassignment and disciplinary actions constitute an adverse employment action under Title VII. The Court again disagrees.

- 20 -

At first, Plaintiff admits that "[s]tanding alone, [her] reassignment to a special education position in August 2008 was [sic] not actionable" under Title VII. Pl.'s Mem. in Opp. to Summ. J. at 15-16. However, throughout her brief, she refers to the reassignment as evidence of a hostile work environment and/or evidence of an adverse employment action which supports her Title VII claim. *See id.* Because of this, the Court addresses briefly why such Banks' reassignment (even combined with other evidence) is insufficient to establish a hostile work environment or an adverse employment action under Title VII.

In *Lucero v. Nettle Creek School Corporation*, the Seventh Circuit rejected a teacher's claim that her reassignment from a High School English teacher to Junior High English teacher was a materially adverse employment action sufficient to sustain an action under Title VII. *Lucero v. Nettle Creek School Corporation*, 566 F.3d 720, 729-31 (7th Cir. 2009). In that case, the plaintiff claimed the reassignment was materially adverse because it damaged her career prospects since teaching High School Honors English required more training than teaching Seventh Grade English. *Id.* at 730. In rejecting this argument, the Seventh Circuit determined that because the plaintiff had not suffered "a cut in pay, benefits, or privileges of employment" when she was reassigned, her claim was not materially adverse. *Id.* at 729-30.

Here, it is undisputed that Banks' compensation and benefits were unaffected when Gonzales reassigned Banks as a special education teacher. Indeed, the record is void of any evidence which suggests that Banks' pension or other benefits have been in any way affected. While Banks argues that her reassignment was adverse because her responsibilities changed since she had to complete IEPs, "a plaintiff must show more than an inconvenience or alteration of job responsibilities" in order to demonstrate an adverse employment action. *Rhodes v. Illinois Dept. of Trans.*, 359 F.3d 498, 504 (7th Cir. 2004).

Furthermore, the Court finds the statistical data Banks presents equally unavailing. Such evidence purports to illustrate a decline in African-American students and teachers at George Washington since Gonzales became principal. Pl.'s Mem. in Opp. to Summ. J. at 6. However, this evidence, even if true, is not enough to survive summary judgment.

A plaintiff can present circumstantial evidence to establish a claim of discrimination under Title VII. Such evidence can include "statistical . . . [evidence] that similarly situated employees outside of the protected group systematically receive better treatment . . . [.]" *Graves v. St. Joseph County Health Dep't*, No. 3:10-CV-315-TLS, 2012 U.S. Dist. LEXIS 134661 at *26 (N.D. Ill. Sept. 17, 2012) (citing *Darchak v. Chi. Bd. of Educ.*, 580 F.3d 622, 630 (7th Cir. 2009)). However, the evidence Banks

- 22 -

provides only involves a decrease in African-American students and teachers, not evidence of similarly situated non-African American teachers receiving better treatment than she received. Indeed, Banks admits that she has no knowledge of any similarly situated non-African American teachers who received better treatment. Pl.'s L.R. 56.1(b)(3)(A) Resp. at 21.

This admission is fatal to Plaintiff's Title VII claim. *See Giwa v. City of Peoria*, No. 09-1306, 2013 U.S. Dist. LEXIS 2369 at *7 (C.D. Ill. Jan. 8, 2013) (noting that a *prima facie* case of racial discrimination under Title VII requires evidence that (1) the plaintiff is a member of a protected class; (2) the plaintiff is meeting the employer's legitimate performance expectation (3) the plaintiff suffered an adverse employment action; and (4) the employer treated similarly situated persons who were not members of the protected class more favorably). Thus, the Court rejects Plaintiff's alternative argument that her Title VII claim survives because she has established an adverse employment action.

### c. *Hostile Work Environment & Indirect Method*

The Court notes that to the extent Plaintiff is attempting to proceed under the indirect method of proof, her Title VII claim also fails. In order to sustain a claim under the indirect method, Plaintiff must provide evidence that establishes that she was a satisfactory employee. *See generally Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 647 (7th Cir. 2005). Here, Plaintiff admits she was

late 93 times from September 2008 to March 2009. *See* Pl.'s L.R. 56.1(b)(3)(A) Resp. at 13. This evidence, in it of itself establishes that Banks would be unable to sustain a claim under the indirect method.

Because Banks failed to present sufficient evidence establishing a hostile work environment or a materially adverse employment action, the Court grants Defendants' motion for summary judgment on Count I.

### *2. Count II*

In Count II, Plaintiff claims that the Board is liable under Title VII for retaliation. Similar to claims of discrimination, a plaintiff can establish retaliation pursuant to Title VII under either the direct or indirect method of proof*. Weber v. Univs. Research Ass'n, Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). "To establish retaliation under the direct method, a plaintiff must present evidence, direct or circumstantial showing that: (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action; and (3) a causal connection exists between the two." *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012).

In light of the Court's finding that Plaintiff fails to establish a materially adverse employment action for the purposes of Title VII, the Court grants Defendants' Motion for Summary Judgment with respect to Count II.

- 24 -

### 3. Count III

In Count III, Banks claims that both Gonzales and the Board are liable under 42 U.S.C. § 1981. She claims that Gonzales interfered with her rights under her Collective Bargaining Agreement contract with the Board and this is a violation of her Thirteenth Amendment rights. Specifically, she claims that because she sought to enforce the anti-discrimination provision of her contract, she has a claim against both Defendants under Section 1981.

"Section 1981 bars all racial discrimination with respect to making and enforcing contracts." *Gonzales v. Ingersoll Mill. Mach. Co.*, 133 F.3d 1025, 1034 (7th Cir. 1998). Courts apply "the same elements to retaliation claims under Title VII and § 1981." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). Given the Court's determination that Plaintiff has failed to establish a hostile work environment or another materially adverse employment action under Title VII, the Court grants Defendants summary judgment with respect to Plaintiff's Section 1981 claim.

### 4. Count IV

Plaintiff asserts that both Defendants are liable under 42 U.S.C. § 1983 for violating Plaintiff's right to enforce her contract and for violating her right to be free from discrimination in the workplace. Defendants contend that they are entitled to summary judgment because (1) Plaintiff's 1983 claim against the

Board is unsupported; and (2) Plaintiff's 1983 claim against Gonzales fails for the same reasons as her Title VII claims.

### a. Plaintiff's Section 1983 Claim Against Board of Education

In order to sustain an actionable claim for municipal liability under Section 1983, a plaintiff must demonstrate that the municipality violated the plaintiff's constitutional rights. The constitutional violation must be caused by "(1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with "final policymaking authority." *Milestone v. City of Monroe*, 665 F.3d 774, 780 (7th Cir. 2011).

Plaintiff claims the Board is liable under the third theory of liability. She argues that her constitutional rights were violated by the decision of final policymaker, Cheryl J. Colston ("Colston"), the Chicago Public Schools' Director of Employee Relations. Specifically, Banks claims that despite inquiring immediately why she was removed from George Washington in December 2011, Colston failed to provide her a response until May 2011. Plaintiff further claims that Colston's response was "knowingly false." Pl.'s Memo. in Opp. to Summ J. at 23.

As a preliminary matter, Banks has failed to establish that Colston is an officer of the Board with final policy authority. "[N]ot every decision by municipal officers automatically subjects the municipality to § 1983 liability." *Pembaur v. City of*

*Cincinatti*, 475 U.S. 469, 481-82 (1986). Instead, such liability "attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* In Illinois, it is the Board, and not the Board's officers, that have such authority. *Duda v. Board of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1061 (7th Cir. 1998).

Notwithstanding this flaw, even if the Court assumes that Plaintiff's allegations are true – that Colston made a false response to Banks' inquiries – Banks fails to demonstrate that this false response was racially discriminatory or somehow amounts to a constitutional violation. She does not argue Colston was influenced by Gonzales or any other employee at George Washington. Indeed, Plaintiff fails to allege that Colston ever engaged in any unlawful conduct when she responded to Banks' inquiries. These failures illustrate Plaintiff's inability to establish a *prima facie* case against the Board. As such, the Court grants Defendants' Motion for Summary Judgment with respect to Plaintiff's Section 1983 claim against the Board.

### b. *Plaintiff's Section 1983 Claim Against Gonzales*

To the extent that Plaintiff is attempting to assert a Section 1983 claim against Gonzales individually, her claim also fails.

To establish individual liability under Section 1983, a plaintiff must establish that the defendant was "personally

responsible for the deprivation of a constitutional right." *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006). In her Complaint, Banks alleges that she "was discriminated against based upon her race (African-American) in violation of 42 U.S.C. § 1983 . . . " Pl.'s Compl. at 2. Other than this bare allegation, Plaintiff fails to provide the Court any additional argument to support her Section 1983 claim against Gonzales. Because of this, the Court presumes that Plaintiff's claimed constitutional violation is under the Equal Protection Clause of the Fourteenth Amendment.

In order to state an equal protection claim under § 1983, a plaintiff must establish that (1) she is a member of a protected class; (2) she was similarly situated to individuals not part of the protected class; (3) she was treated differently than those similarly situated individuals; and (4) the different treatment was made with discriminatory intent. *Guy v. State of Illinois*, 958 F.Supp. 1300, 1307 (N.D. Ill. 1997).

As previously mentioned, Banks admits that she "does not have knowledge of any similarly situated non-African Ameican *[sic]* staff whom she believes were treated better than she was." Pl.'s L.R. 56.1(b)(3)(A) Resp. at 21. Thus, Plaintiff is unable to establish a *prima facie* case against Gonzales under Section 1983.

### 5. *Count V*

Count V alleges that Defendants are liable under the Illinois Whistleblower Act because Defendants retaliated against Plaintiff after she filed her EOCO and EEOC charges.

Pursuant to the Illinois Whistleblower Act, "[a]n employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of State or federal law, rule or regulation." 740 Ill. Comp. Stat. 174/15. This statute has been interpreted to have "codified the common law tort of retaliatory discharge in Illinois." *Riedlinger v. Hudson Respiratory Care, Inc.*, 478 F.Supp.2d 1051, 1054-55 (N.D. Ill. 2007). The tort of retaliatory discharge can be established if a plaintiff shows that "(1) she has been discharged; (2) in retaliation for her activities; and (3) the discharge violates a clear mandate of public policy." *Thomas v. Guardsmark, LLC,* 487 F.3d 531, 535-36 (7th Cir. 2006).

Illinois' Whistleblower Act only creates a cause of action against an employer. *See* 740 Ill. Comp. Stat. 174/30; *see also Robinson v. Morgan Stanley*, No 06-C-5158, 2007 WL 2815839 (N.D. Ill. Sept. 24, 2007). Thus, Plaintiff's claim under the Illinois Whistleblower Act against Gonzales fails.

With respect to her claim against the Board, it is undisputed that Banks was not discharged from her employment. Instead, she

retired. Thus, Plaintiff could not satisfy the first element of the claim. Moreover, for the reasons previously discussed, Plaintiff is unable to demonstrate that Defendants retaliated against her with an adverse employment action.

Thus, the Court finds no disputed issue exists with respect to Count V and grants Defendants' Motion for Summary Judgment.

### 6. *Count VI*

In Count VI, Plaintiff alleges that both Defendants are liable under the Illinois Personnel Records Act, 820 ILCS § 40/1. Defendants argue that they are entitled to summary judgment because Plaintiff failed to attempt to resolve this issue through the Department of Labor and this is a mandatory procedure prior to filing a claim in court. Plaintiff failed to respond to this argument.

Notwithstanding the fact that the Court could find that Plaintiff has waived this claim by failing to respond, the claim also fails on the merits. *See United States v. Farris*, 532 F.3d 615, 619 (7th Cir. 2008).

An action may be brought under the Illinois Personnel Records Act "only after a plaintiff has exhausted the statutory administrative remedies." *Hefley v. Davis*, No. 08-C172, 2008 WL 5114647 at *3 (N.D. Ill. Dec. 2, 2008). One of those remedies is seeking resolution through the Department of Labor. *Anderson v. Bd. of Educ. of City of Chi.*, 169 F.Supp.2d 864, 868-70 (N.D. Ill.

2001).  Banks fails to demonstrate that she has pursued this claim with the Department of Labor.  Thus, Defendants' Motion for Summary Judgment with respect to Count VI is granted.

### III.  <u>CONCLUSION</u>

For the reasons stated herein, the Court rules as follows:

1.  Defendants' Motion to Strike is granted in part and denied in part; and

2.  Defendants' Motion for Summary Judgment is granted.


**IT IS SO ORDERED.**


_____
                Harry D. Leinenweber, Judge
                United States District Court

Date:3/12/2013

- 31 -